UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL, AND INDUSTRY FUND; THE TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION; and THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,<br><br>Petitioners,<br><br>– against –<br><br>W.W. TIMBERS, INC.,<br><br>Respondent. | **OPINION AND ORDER**<br>19 Civ. 6132 (ER) |

Ramos, D.J.:

Two union benefit funds, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational, and Industry Fund (the "ERISA Funds"), and the Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"), along with the associated labor-management organizations, the New York City and Vicinity Carpenters Labor-Management Corporation and the New York City District Council of Carpenters (the "Union"), petition the Court to confirm an arbitration award against W.W. Timbers, Inc. ("W.W. Timbers"), pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 185. For the reasons stated below, the petitioners' motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

The petitioners are all labor-related organizations that function for the benefit of carpenters in the New York City area. The ERISA Funds are trustees of several labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, based in New York City. Doc. 1 ¶ 4. The Charity Fund is a 501(c)(3) charitable organization based in New York City. *Id.* ¶ 5. The Labor-Management Corporation and the Union are labor-management organizations based in New York as well. *Id.* ¶¶ 6, 7. The respondent, W.W. Timbers, is an Illinois corporation that has employed carpenters affiliated with the petitioners. *Id.* ¶ 8.

In October 1997, W.W. Timbers entered into an agreement (the "International Agreement") with the United Brotherhood of Carpenters and Joiners of America ("UBCJA"), a labor union employed by the Funds. *Id.* ¶ 9. The International Agreement provides that the "[p]ayment of annuity, pension, and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement for that locality . . . ." Doc. 1, Ex. A, Art. II. The International Agreement further states that it will:

> remain in effect for three (3) years from [the execution date], and it shall automatically renew itself for subsequent three-year periods unless written notice to terminate is given by either party to the other . . . not more than ninety (90), and not less than (60), days prior to its expiration date or the expiration date of any renewal period.

*Id.*, Art. VIII. Neither W.W. Timbers nor UBCJA has ever provided notice to terminate the International Agreement. Doc. 1 ¶ 14.

The International Agreement binds W.W. Timbers to the UBCJA collective bargaining agreement ("CBA"). Doc. 1, Ex. B, Art. XV, § 3. The CBA requires W.W. Timbers to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union. *Id.*, Art. XV, § 1. It further requires W.W. Timbers to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. *Id.* It is a violation of the International Agreement "for any signatory Employer to fail to furnish proper records when requested, for the purpose of completing an audit." *Id.*

The CBA contains an arbitration clause. It states that when a "dispute or disagreement arise[s] between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before an impartial arbitrator . . . ." *Id.*, Art. XV, § 7. Permissible impartial arbitrators include Roger Maher, Ruth Raisfeld, or Howard Edelman. *Id.* During arbitration, the arbitrator "shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy." *Id.* An arbitrator's award "shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction." *Id.* If the Funds are required to arbitrate a dispute over unpaid contributions, they are entitled to collect: (1) delinquent contributions; (2) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (3) liquidated damages in the amount of 20% of the unpaid contributions; and (4) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies. *Id.*, Art. XV, § 6. The Funds' collection policy states that "attorney's fees shall be assessed against a delinquent employer, at the same hourly rate charged

to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ." Doc. 1, Ex. D, § V(6).

A dispute between the parties arose when the Funds conducted an audit covering the period from October 1, 2003 through June 30, 2008.  Doc. 1 ¶ 20.  The audit revealed that W.W. Timbers failed to remit all required contributions to the Funds.  *Id*.  The Funds initiated arbitration before the designated arbitrator, Roger E. Maher (the "Arbitrator").  *Id*. ¶ 21.  The Funds sent notice to W.W. Timbers that a hearing would be held on February 7, 2019.  *Id.*, Ex. E.  W.W. Timbers attended the hearing by telephone.  *Id*., Ex. F.  The Arbitrator rendered his written decision on February 11, 2019.  *Id.*, Ex. F.

The Arbitrator found that W.W. Timbers violated the CBA when it failed to remit all required contributions to the Funds.  *Id*. ¶ 23.  The Arbitrator determined that W.W. Timbers was delinquent in paying rate differential fringe benefit contributions due under the agreement, and ordered W.W. Timbers to pay the Funds a sum of $14,258.28, consisting of:  (1) principal contributions of $3,846.75; (2) interest of $3,616.70; (3) liquidated damages of $3,616.70; (4) non-audit late payment interest of $1.97; (5) promotional funds of $18.16; (5) court costs of $400; (6) attorney's fees of $1,500; (7) arbitrator's fees of $500; and (6) audit costs of $958.  *Id*., Ex. F.  The Arbitrator also found that an interest rate of 7.5% from the date of the issuance of the award was appropriate.  *Id*.  In rendering his award, the Arbitrator looked to the CBA and stated:

> This Contract obligated the Respondent-Employer to make certain payments to Fringe Benefit Trust Funds on behalf of all its carpenter employees pursuant to schedules set forth in the Agreement. In addition, it authorized the Petitioners to conduct an audit of the Respondent-Employer's books and records in order to verify that all the required contributions were made to each of the aforesaid Fringe Benefit Trust Funds maintained by the Petitioners. In accordance with this auditing provision, an accountant employed by the Petitioners, with the consent of the Respondent, performed an audit of the books and records of the Respondent herein.

*Id.*  In making his decision, the Arbitrator also relied on the auditor's testimony.  *Id.*  The auditor stated that he performed an audit of W.W. Timbers' books, and fringe benefit contributions on rate differentials were discovered in the amount of $3,846.75 for the period of October 1, 2003 through June 30, 2008.  *Id.*  The auditor forwarded a copy of his summary report to W.W. Timbers.  *Id.*  The auditor then stated that, subsequently, the Funds and W.W. Timbers agreed on a settlement of $6,500.  *Id.*  W.W. Timbers never signed the settlement agreement or paid the $6,500.  *Id.*  At the hearing, W.W. Timbers' representative, who appeared via telephone, stated that the company had never received the settlement document.  *Id.*  In light of this representation, the Funds offered W.W. Timbers until the close of business the following day, February 8, 2019, to accept the original $6,500 offer.  *Id.*  The Arbitrator made clear that if the offer was not accepted, he would issue an award for the full amount of the Funds' claim for $14,458.28.  *Id.*  W.W. Timbers did not accept the settlement offer, and the Arbitrator issued the full award.  *Id.*

The Funds' attorneys, Nicole Marimon and Adrianna Grancio, of the law firm Virginia & Ambinder, LLP ("V&A"), billed their time at $275 per hour for work performed in connection with this action, and legal assistants billed their time at a rate of $120 per hour.  *Id.* ¶¶ 30–31; *see also id.*, Ex. G.  These rates were determined as a result of negotiations between V&A and the Funds.  *Id.* ¶ 33.  V&A's total billings in this matter amount to $797.50, reflecting 2.90 hours of work.  *Id.*, Ex. G.  V&A also incurred $75 in costs in connection with this matter.  *Id.* ¶ 35.

### B. Procedural History

On July 1, 2019, the Funds filed the instant petition to confirm arbitration.  Doc. 1.  Petitioners served W.W. Timbers on July 11, 2019.  Doc. 9.  W.W. Timbers failed to answer within 21 days.  Doc. 10.  The petition is therefore considered unopposed.  *Id.*

## II. LEGAL STANDARD

### A. Standard for Confirming Arbitrations

Confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The court is required to grant the award unless it is vacated, modified, or corrected. *Id.* (quoting 9 U.S.C. § 9). An application for a judicial decree confirming an award receives "streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal quotation marks and punctuation omitted) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)). It is not necessary that the arbitrator explain the rationale for the award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). In short, as long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award — even if it disagrees with it on the merits. *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks and citation omitted).

### B. Summary Judgment Standard

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Trs. for The Mason*

*Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967 (RA), 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on the record." (internal quotation marks and citation omitted)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

Even if a motion for summary judgment is unopposed, courts are required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). "[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.' *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

### III.  DISCUSSION

#### A.  Confirmation of the Arbitration Award

The Court has conducted a limited review of the arbitration agreement entered into by the parties and the ensuing arbitration award.  The Arbitrator was acting within the scope of his authority, as granted to him by the CBA.  Doc. 1, Ex. A, Art. XV, Sec. 7.  The CBA permitted either party to seek arbitration in front of an impartial arbitrator in the event of a dispute.  *Id*.  The CBA specified that any arbitration was to take place before one of three arbitrators, one of whom was the arbitrator assigned here.  *Id*.  In reviewing the case, the Arbitrator had "full and complete authority to decide any and all issues raised by the submission."  *Id*.

In making his determination, the Arbitrator relied on the CBA, the auditor's summary report, and the testimony of the auditor and W.W. Timber's representative.  Doc. 1, Ex. G.  There is much more than a "barely colorable justification for the outcome reached."  *Landy*, 954 F.2d at 797; *see also Trs. of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party.").  Thus, based on the record provided, together with the appropriate narrow level of review, the Court finds that there is no disputed issue of material fact and confirms all portions of the arbitration award.

### B. Attorney's Fees, Costs, and Post-Judgment Interest

Courts "have routinely awarded attorney[']s fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)) (collecting cases). Given that W.W. Timbers has not abided by the arbitration award and has failed to participate in this action, the Court finds that an award of attorney's fees and costs is appropriate.

The Court has reviewed the records supporting 2.9 hours of attorney work at a rate of $275 per hour for the work of one partner and one associate, and at a rate of $120 per hour for the services of legal assistants. Doc. 1 ¶¶ 30–34. Courts within this District have found attorney's fees at similar rates involving similar matters to be reasonable. *See Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Metro Fine Mill Work Corp.*, 2015 WL 2234466, at *5 (S.D.N.Y. May 12, 2015) (approving rates of $225 for V&A's associates and $100 for its legal assistants). The Court agrees, and finds the $75 in costs incurred for this action reasonable, as well.

The Court also grants post-judgment interest on the full judgment amount pursuant to 28 U.S.C. § 1961(a). *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion is GRANTED. The arbitration award is confirmed, and the Clerk of the Court is directed to enter judgment in favor of the petitioners in the amount of $14,458.28 pursuant to the award, plus interest accruing at the annual rate of 7.5% from February 11, 2019 until the date of entry of judgment. The Clerk is also directed to add $797.50 in attorney's fees, and $75 in costs. This judgment shall accrue post-judgment interest as mandated by 28 U.S.C. § 1961. A copy of this decision will be mailed to W.W. Timbers. The Clerk of the Court is respectfully directed to close the case.

It is SO ORDERED.

Dated: April 21, 2020
New York, New York

Edgardo Ramos, U.S.D.J.